IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  04-cv-01160-LTB-CBS


ISABELLE DerKEVORKIAN,

        Plaintiff,

v.


LIONBRIDGE TECHNOLOGIES, INC., d/b/a LIONBRIDGE US, INC.,
SHARRYN E. ROSS, and
ROSS, MARTEL & SILVERMAN, LLP,

        Defendants.

_____

ORDER
_____

This matter is before me on:  1) Defendant, Lionbridge Technologies, Inc., d/b/a

Lionbridge U.S., Inc.'s, Motion for Summary Judgment, filed on March 23, 2005; and  2)

Defendants, Sharryn E. Ross and Ross, Martel & Silverman, LLP's, Motion for Summary

Judgment, filed on September 12, 2005, seeking judgment in their favor and dismissal of Plaintiff,

Isabelle DerKevorkian's, complaint.  Oral arguments would not materially assist me in the

determination of these motions.  After consideration of the motions, as well as all related

pleadings, I GRANT IN PART and DENY IN PART Defendant Lionbridge's motion, and

GRANT Defendants Sharryn E. Ross and Ross, Martel & Silverman, LLP's motion for the

following reasons.

**LIONBRIDGE'S MOTION FOR SUMMARY JUDGMENT**

<u>I.  Underlying Facts</u>

The following facts, which have not been challenged by Defendant Lionbridge for the purpose of this motion, are taken from Plaintiff's amended complaint.  Plaintiff is a citizen of France.  In July 1997, she began working as an intern for a company in Boulder, Colorado, and was subsequently hired by that company as a Translator.  In 2000, Defendant Lionbridge acquired the company and, as a result, Plaintiff became a Lionbridge employee.  In early 2000, Plaintiff was promoted to Project Manager and, in April of 2001, was promoted to the position of Translation Manager.

Plaintiff's work visa was to expire on October 1, 2003.  In order to continue living and working in the United States beyond that time, Plaintiff needed to obtain permanent resident status, or a "green card."  As a result, Plaintiff requested sponsorship by Lionbridge pursuant to its Permanent Resident Program.  Under this program a foreign employee can request Lionbridge's sponsorship of his or her green card application with the United States Immigration and Naturalization Service (the "INS"), now the Bureau of Immigration and Customs Enforcement under the Department of Homeland Security.

Lionbridge approved its sponsorship of Plaintiff's green card application on December 17, 2001.  To participate in the program, Plaintiff was required to remain employed at Lionbridge for two years following receipt of her green card and Plaintiff could not move to another position within the organization until the application had been on file with the INS for 180 days.  Additionally, Plaintiff agreed to allow Lionbridge's legal counsel handle her application.

2

In early March of 2002, Lionbridge retained Defendants Sharryn Ross and her law firm to handle Plaintiff's green card application. At that point it became apparent that Plaintiff's work visa had not been properly amended to reflect her April 2001 promotion to Translation Manager. As part of the process of amending Plaintiff's visa, Plaintiff's position of Translation Manager was classified by the State of Colorado Department of Labor Certification as a "Level Two, General and Operations Manager." The Department's applicable prevailing wage of a "Level Two, General and Operations Manager" was $106,288, which significantly exceeded Plaintiff's actual salary of $57,000.

In September 2002, Lionbridge informed Plaintiff of the prevailing wage discrepancy, and the fact that it was unwilling to pay her within 5% of the assessed prevailing wage for the position of Translation Manager. As a result, Lionbridge suggested that Plaintiff accept a demotion, without a decrease in pay, to the position of Translator. Plaintiff refused, as she believed such demotion would adversely affect her career and would limit her duties to translation work. After some negotiations, Plaintiff and Lionbridge were unable to agree on a feasible solution, and Lionbridge ultimately did not file an application with the INS for Plaintiff's green card. Plaintiff's work visa expired on October 1, 2003. At that time she was forced to resign her employment with Lionbridge and has since left the United States.

## II. Law

Defendant Lionbridge's motion for summary judgment is predicated on Federal Rule of Civil Procedure 12(b)(6), in that it maintains that all of Plaintiff's claims against it should be dismissed with prejudice because, as a matter of law, Plaintiff fails to state claims upon which relief can be granted in light of the undisputed facts. A claim may be dismissed for failure to state

3

a claim upon which relief can be granted either because it asserts a legal theory not cognizable as

a matter of law, or because the claim fails to allege sufficient facts to support a cognizable legal

claim.  Fed. R. Civ. P. 12(b)(6); *Morey v. Miano*, 141 F. Supp.2d 1061, 1062 (D.N.M. 2001).

*See also Van Schaack v. Phipps,* 558 P.2d 581, 585 (Colo. App. 1976)(citations omitted)("[a]

judgment of dismissal for failure to state a claim upon which relief can be granted may be entered

upon a motion for summary judgment").

Where, as here, this is a federal court sitting in diversity, my "task is to ascertain and apply

Colorado law to the end that the result obtained in federal court is the result that would have been

reached if this litigation had been pursued in a Colorado court."  *Perlmutter v. U.S. Gypsum Co.*,

54 F.3d 659, 662 (10th Cir. 1995)(*quoting Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 641

(10th Cir. 1991)).   As such, I regard the pronouncements of the Supreme Court of Colorado as

authoritative statements of Colorado law and "in the absence of any compelling reason to

disregard [them]," I follow decisions of the Colorado Court of Appeals as well.  *Perlmutter v.

U.S. Gypsum, supra*, 54 F.3d at 662 (*citing Romero v. International Harvester Co.*, 979 F.2d

1444, 1449 fn. 3 (10th Cir. 1992)).

### III. Breach of Contract/Promissory Estoppel

In her amended complaint, Plaintiff asserts claims against Defendant Lionbridge for breach

of contract (First Claim For Relief) and promissory estoppel (Second Claim For Relief).  She

alleges that a contract was created when Lionbridge agreed to sponsor her under its Permanent

Resident Program, and that Lionbridge subsequently breached this agreement by failing to

adequately "assist and support" Plaintiff in the process of applying for her green card.

Alternatively, she asserts that Lionbridge's agreement to provide sponsorship under the

4

Permanent Resident Program constituted a promise to assist and support Plaintiff in the process of applying for her green card.   Such promise included "taking all reasonable and appropriate actions to enable Plaintiff to apply for the green card."   Specifically, Plaintiff asserts that Lionbridge refused to take reasonable actions to proceed with her application process which included:  challenging or paying her the prevailing wage determination assigned to her position; commissioning a private salary survey or a qualified industry salary survey in lieu of that determination; "tweaking" or redefining her job description in order to conform to a lower classification; or demoting Plaintiff to the position of Translator once her green card was issued.

In its motion for summary judgment, Lionbridge argues that Plaintiff has failed to state a legally cognizable claim for breach of contract or promissory estoppel, as a matter of law, because Plaintiff  concedes that her employment relationship with Lionbridge was at-will.  Because Plaintiff does not allege a violation of termination procedures or any agreement or promise of continued employment, and acknowledges the at-will relationship, Lionbridge asserts that she cannot state a claim for breach of contract or promissory estoppel.

Lionbridge's characterization of Plaintiff's claims is misplaced.  Plaintiff is not seeking damages for an alleged wrongful termination of the employment relationship.  Rather, she seeks damages for Lionbridge's alleged breach of a separate and distinct agreement – specifically, Lionbridge's agreement to sponsor Plaintiff's green card application.  Although such agreement is clearly within the context of the employment relationship, I disagree with Lionbridge's assertion that her "green card application is inextricably linked to her employment with Lionbridge as her sponsor, and to Lionbridge's right to terminate her employment at any time."  Although it is true that "Lionbridge's sponsorship of her for a green card does not alter the at-will relationship,"

Plaintiff's claims are not based on a termination from her employment.  Instead, her claim is that a contract was created by Lionbridge's agreement to fully sponsor Plaintiff under the terms of the Permanent Resident Program; that Lionbridge breached that contract by failing to assist and support Plaintiff in the process of applying for lawful permanent residence status; and that as a proximate result of that breach, Plaintiff has suffered damages.  *See Wisehart v. Meganck,* 66 P.3d 124, 129 (Colo. App. 2002)(comparing a case in which the plaintiff's claim was not related to the at-will termination right).   As a result, Plaintiff has adequately asserted in her amended complaint a breach of contract claim cognizable under Colorado law.  *See generally Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)(ruling that personnel policies or practices can form the basis of an enforceable contract between employer and employee).

For the same reasons, I likewise conclude that Plaintiff adequately states a promissory estoppel claim for which relief can be granted under Colorado law.   Plaintiff claims that Lionbridge's agreement to provide full sponsorship under its Permanent Resident Program constituted a promise to pay the costs associated with the application and to assist and support her in the process of applying for lawful permanent resident status – which included taking all reasonable and appropriate actions related to her application; that she reasonably believed that Lionbridge would take such actions; that such promise was made with the reasonable expectation that it would induce her to act; that she reasonably relied on Lionbridge's promise to her detriment; and that such reliance has caused her damages.  "Promises which are ancillary to an otherwise at-will employment arrangement, such as termination procedures contained in employee manuals, may support a claim for promissory estoppel." *Pickell v. Arizona Components Co.,* 902 P.2d 392, 395 (Colo. App. 1994), *rev'd on other grounds*, 931 P.2d. 1184 (Colo. 1997).

6

Non-Economic Damages

Lionbridge next argues that Plaintiff cannot seek or recover non-economic damages for emotional distress related to her breach of contract and promissory estoppel claims.  I agree.

As to Plaintiff's breach of contract claim, Colorado courts have recognized that a willful or wanton breach will support an award of damages for emotional distress, if such distress is a "natural and probable consequence of the breach."  *See Trimble v. City & County of Denver*, 697 P.2d 716, 731 (Colo. 1985); *see also Giampapa v. American Family Mut. Ins. Co.*, 64 P.3d 230, 238 (Colo. 2003); *Brossia v. Rick Const., L.T.D. Liability Co.,* 81 P.3d 1126, 1131 (Colo. App. 2003)(non-economic damages, such as emotional distress damages, are available in breach of contract actions only in extraordinary contractual circumstances where such damages are foreseeable at the time of contracting); CJI-Civ. 4th 30:35.

Lionbridge asserts that Plaintiff  should be precluded from recovering such damages for emotional distress because she failed to specifically plead these special damages as required by Fed. R. Civ. P. 9(g)("[w]hen items of special damage are claimed, they shall be specifically stated").  *See also* C.R.C.P. 9(g).  The Colorado Supreme Court has adopted the general rule that special damages, which are not the usual and natural consequence of the wrongful act complained of, must be specifically pled and proved.  *Bueno v. Denver Pub. Co.,* 32 P.3d 491, 496 (Colo. App. 2000)(*overruled on other grounds*)(*citing Tucker v. Parks,* 7 Colo. 62, 1 P. 427 (1884)).  Therefore, I agree that non-economic damages on a breach of contract claim constitute special damages under Colorado law.

Plaintiff does not contest that she failed to specifically allege any non-economic damages related to her breach of contract claim.  Rather, she argues that her factual allegations in her

amended complaint are "more than sufficient to satisfy the test for wilful and wanton breach" in order to support an award for non-economic damages.  Plaintiff generally alleges in her amended complaint that as a proximate cause of Lionbridge's breach she has "suffered damages in an amount to be determined at trial."  Only in her conclusory prayer for damages does Plaintiff seek unspecified  "compensatory economic and non-economic damages."  Plaintiff's factual allegations, although quite lengthy, fail to specifically allege that Lionbridge's breach rose to the level of wilful and wanton behavior or that she has suffered any particular emotional distress related damages relative to that breach.  As such, I conclude that she has failed to specifically plead any non-economic damages related to her breach of contract claim as required by Fed. R. Civ. P. 9(g) and C.R.C.P. 9(g).

I note that the "trial court holds wide discretion to permit amendment of pleadings to include special damages, especially when opposing party is made aware of items prior to trial." *Karakehian v. Boyer*, 900 P.2d 127, 1281 (Colo.App. 1994)(*reversed, in part, on different grounds*, 915 P.2d 1295 (Colo. 1996)).  "The underlying purpose behind the rule requiring specific pleading of special damages is to put the defendants on notice as to any unusual damages being sought by virtue of their alleged wrongdoing which could not otherwise reasonably be inferred as resulting from the wrongful act."  *Cox v. Johnston,* 484 P.2d 116, 120-21 (Colo. App. 1971)(*citing Hunter v. Quaintance*, 69 Colo. 28, 168 P. 918 (1917)).

Here, although Lionbridge was on notice that Plaintiff was seeking non-economic damages as a general matter, it was not on pleading notice that she was asserting such damages relative to an unpled claim of wilful and wanton breach.  Furthermore, I note that Plaintiff was previously allowed to amend her complaint, after extensive discovery, and that the deadline to

8

amend has passed.  Under theses circumstances, I deny Plaintiff's request to amend her complaint to add a specific allegation of wilful and wanton breach of contract by Lionbridge.          As to Plaintiff's claim for relief based on a theory of promissory estoppel, Plaintiff has not cited and my research has not revealed any Colorado case that allows for the recovery of  non-economic damages for a promissory estoppel claim.  In contrast, Lionbridge refers me to *Zick v. Krob*, 872 P.2d 1290, 1295 (Colo. App. 1993), in which the court noted that "[d]amages awarded in a sufficient amount to compensate for the actual loss sustained is a proper remedy" for a successful promissory estoppel claim.  Therefore, although I have concluded that Plaintiff's claims for relief for breach of contract and promissory estoppel adequately state claims upon which relief can be granted in order to survive summary judgment, I conclude that Plaintiff may not seek non-economic damages related to these claims.

<u>V.  Negligence</u>

I next address Lionbridge's assertion that Plaintiff has failed to state a claim, as a matter of Colorado law, for tort damages based on Lionbridge's alleged negligence (Third Claim For Relief).   Plaintiff's claim is that Lionbridge owed her a duty of care with respect to her effort to receive permanent resident status, once it voluntarily accepted her into its Permanent Resident Program; that it breached that duty; and that as a result she has incurred "injuries damages and loses."

The existence and scope of a tort duty is a question of law to be determined by the court. *A. C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 866 (Colo. 2005) (*citing Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465 (Colo. 2003)).  "The determination that a duty does or does not exist is an expression of the sum total of those

considerations of policy which lead the law to say that the plaintiff is or is not entitled to protection." *Id.* (citations omitted).   In determining whether the law imposes a duty in Colorado, many factors are to be considered.   *See Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo. 1987). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards – whether reasonable persons would recognize a duty and agree that it exists." *Id.*; *see also HealthONE v. Rodriguez,* 50 P.3d 879, 888 (Colo. 2002).

Colorado recognizes the viability of some tort claims that "arise around the employment relationship." *Wisehart v. Meganck,*  66 P.3d 124, 127 (Colo. App. 2002).  However, neither party refers me to, nor does my research reveal, a Colorado case that determined whether an independent tort duty exists under the facts alleged here.  In *Wing v. JMB Property Management Corp.,* 714 P.2d 916, 918 (Colo. App. 1985), a division of the Colorado Court of Appeals reviewed a case in which the plaintiff sought recovery on a tort theory of negligent termination of employment.  In support of her claim that a tort for negligent termination was actionable, the plaintiff in that case argued, among other things, that "a duty exists between an employer and employee where personnel policies exist." *Id.*   In concluding that a tort of negligent termination did not exist under Colorado law, the *Wing* court noted that the case law did not support the plaintiff's argument that a non-contractual duty could be based on a personnel policy. *Id.; see also Wisehart v. Meganck, supra,* 66 P.3d at 128 (refusing to recognize a claim for fraud against an employer related to the termination of an at-will employment relationship).

Although Plaintiff does not assert a claim for negligent termination, I hold that no tort-based duty is present here.  In this case it is clear that the alleged duty, as defined by the Plaintiff,

was purely contractual in nature.  Plaintiff concedes in her response that "Plaintiff certainly had no

obligation to sponsor Plaintiff in its Permanent Resident Program," but argues that it was only

after agreeing to do so that Lionbridge "assumed a duty of care."   I decline to find a tort-based

duty of care when the duty identified by Plaintiff is necessarily dependant on Lionbridge's

contractual agreement to accept her into the Permanent Resident Program.  *See Martinez v.*

*Badis*, 842 P.2d 245, 252 (Colo. 1992)("[t]he duty to perform mutually agreed upon contractual

obligations is not the equivalent of a generally recognized duty of care that forms the essence of

negligence claims")(*citing Covert v. Allen Group, Inc.*, 597 F.Supp. 1268, 1269 (D. Colo. 1984));

*see also Boyd v. Garvert,* 9 P.3d 1161, 1163 (Colo. App. 2000)(allowing both a general

negligence and breach of fiduciary duty claim when the duties and facts supporting the two claims

were not the same).

        As a result, I will dismiss Plaintiff's negligence claim against Defendant Lionbridge (Third

Claim for Relief) for failure to state a claim, because I conclude that no tort-based duty of care

exists, under the facts alleged in the amended complaint.  *See e.g. Keller v. Koca*, 111 P.3d 445,

447 (Colo. 2005)(a negligence claim fails where the law does not impose a duty on the defendant

to act for the plaintiff's benefit).

<u>V.  Breach of Fiduciary Duty</u>

        Finally, I address Plaintiff's claim for relief against Lionbridge for breach of fiduciary duty

(Fourth Claim For Relief).  She asserts that Lionbridge owed her a fiduciary duty "with respect to

its handling of the efforts to obtain a green card for Plaintiff;" that Lionbridge breached its

fiduciary duty; and that such breach was a proximate cause of Plaintiff's injuries.  Lionbridge

asserts that she has failed, as a matter of law, to state a claim upon which relief can be granted

because Plaintiff cannot demonstrate that Lionbridge had a fiduciary duty to Plaintiff.

In response, Plaintiff first argues that she has alleged facts that support a finding that Lionbridge owed her a fiduciary duty on the basis of an agency relationship or a confidential relationship.  Colorado case law defines an agent as one who is granted authority to act for or in the place of another.  *Brunner v. Horton,* 702 P.2d 283, 284 (Colo. App. 1985)(*citing Shriver v. Carter*, 651 P.2d 436 (Colo. App. 1982)).  Agency may be established by the conduct of the principal and agent and, as a result, the question of the existence of an agency relationship is ordinarily for the factfinder.  *Id.*  In addition, the existence of a special relationship between contracting parties may trigger a duty of care.  *Wisehart v. Meganck*, *supra,* 66 P.3d at 129.

To establish a breach of a fiduciary duty arising from a confidential relationship in Colorado, there must be proof that:  (1) either the reposing of trust and confidence in the other party was justified, or the party in whom such confidence was reposed either invited, ostensibly accepted, or acquiesced in such trust; (2) the alleged trustee assumed a primary duty to represent the other party's interest in the subject of the transaction; (3) the nature and scope of the duty that arose by reason of the confidential relationship extended to the subject matter of the suit; and (4) that duty was violated, resulting in damage to the party reposing such confidence.  *Equitex, Inc. v. Ungar*, 60 P.3d 746, 752 (Colo. App. 2002)(*quoting Jarnagin v. Busby, Inc.*, 867 P.2d 63, 67 (Colo. App. 1993)).

A special relationship that would give rise to a tort duty of honesty and disclosure is not recognized in the usual employment relationship.  *Wisehart v. Meganck, supra,* 66 P.3d at 129.  However, in *Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1498 (D. Colo. 1988), the court noted that although no Colorado court had ever recognized a fiduciary duty

12

owed by an employer to its employee, the court acknowledged that "such a relationship could certainly be found if other facts were present." *Id.* (quoting *Rhoads v. Harvey Publications, Inc.*, 700 P.2d 840, 847-48 (Ariz. App. 1984)). The *Rosales* court relied on *Dolton v. Capitol Federal Sav. & Loan Assoc.*, 642 P.2d 21 (Colo. App. 1981), which determined that "a fiduciary duty may arise from a business or confidential relationship which impels or induces one party to relax the care and vigilance it would and should have originally exercised in dealing with a stranger" and "a confidential relationship arises when one party has justifiably reposed confidence in another." *Id.* (citations omitted).

Although Plaintiff's bare allegation that Lionbridge breached its fiduciary duty is admittedly conclusory, the factual allegations in Plaintiff's complaint are sufficient to support her contention that Lionbridge owed her a fiduciary duty based either on an agency or a confidential relationship in order to state a claim under Colorado law. Plaintiff's factual allegations are that her long-term employer agreed to sponsor her application for a green card based in part on her value to them as an employee. Under the terms of the program, Plaintiff asserts that Lionbridge took complete control of the process. She alleges that Lionbridge and Defendant Ross failed to properly communicate with her during the process and, in fact, withheld information from her. Plaintiff's allegations in her amended complaint, although minimal, adequately asserts a legal theory for breach of fiduciary duty, and sets forth sufficient facts in support thereof, cognizable under Colorado law. *Cf. Houston By and Through Houston v. Mile High Adventist Academy*, 872 F.Supp. 829, 834 (D.Colo. 1994)(ruling that a plaintiff cannot withstand dismissal of her claim by simply alleging that a fiduciary relationship existed, rather, she "must allege sufficient facts to support [her] claim that a fiduciary duty existed") (*quoting Rosales v. AT & T Info. Sys.*,

*Inc., supra*, 702 F.Supp. at 1499).

Economic Loss Rule

Lionbridge also argues that Plaintiff's claims based in tort are barred by Colorado's economic loss rule as set forth in *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000). In that case, the Colorado Supreme Court ruled that: "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264; *see also BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 70 (Colo. 2004); *Grynberg v. Agritech Inc.*, 10 P.3d 1267, 1269 (Colo. 2000). The rule is based on the source of the duty alleged, not the type of damages suffered. *Town of Alma v. Azco Const., Inc., supra*, 10 P.3d at 1267 fn.8.

Colorado's economic loss rule is not applicable here, however, because I have determined that Plaintiff has adequately stated facts to support a finding of an independent fiduciary duty. *See e.g. A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.,* 114 P.3d 862, 866 (Colo. 2005)(finding the economic loss rule inapplicable due to an independent duty owed by builders to homeowners).

Workers' Compensation Act

I also reject Lionbridge's argument that Plaintiff's tort claims are barred by the exclusivity provisions of the Colorado Workers' Compensation Act. Claims for injuries to economic interests and harm affecting a proprietary or financial interest are not "personal injuries" within the purview of the Workers' Compensation Act. *See Serna v. Kingston Enterprises,* 72 P.3d 376, 379 (Colo. App. 2002)(under the Act, an employee does not surrender any cause of action for injuries apart from "personal injuries," which are defined as "job-related physical or mental

14

injuries of an employee"); C.R.S. § 8-41-104 (under the Act an employee surrenders "any cause

of action, action at law, suit in equity, or statutory or common-law right, remedy, or proceeding

for or on account of [his or her] personal injuries or death").

## VI. Conclusion

In summary, I conclude that Plaintiff adequately states claims for breach of contract and

promissory estoppel upon which relief can be granted against Defendant Lionbridge sufficient  to

survive summary judgment; however, I hold that Plaintiff may not seek non-economic damages

related to these claims.  Furthermore, Plaintiff has failed to state a legally cognizable negligence

claim against Defendant Lionbridge, because no tort-based duty of care exists, under the facts

alleged, as a matter of  Colorado law.  Finally, Plaintiff adequately asserts a cognizable claim for

breach of fiduciary duty sufficient to survive summary judgment not subject to Colorado's

economic loss rule.

## ROSS' MOTION FOR SUMMARY JUDGMENT

### I. Underlying Facts

Unless otherwise noted, it appears the following facts are not genuinely disputed.  After

Plaintiff was accepted into Lionbridge's Permanent Resident Program in December 2001,

Lionbridge retained Defendants Ross and her law firm in March 2002 to handle Plaintiff's

application for a green card.   After being retained, Ross learned that Plaintiff's work visa had not

been amended, as is required by law, to reflect her current position of Translation Manager.  By

March 15, 2002, Ross had prepared paperwork to amend Plaintiff's work visa.

On April 12, 2002, Plaintiff emailed Ross' assistant and asked to be posted regarding the

status of the amendment to her visa.  Ross' assistant replied that the law firm needed to obtain a

formal prevailing wage determination from the State of Colorado Department of Labor Certification before moving forward.  Ross subsequently learned that the Colorado Department of Labor Certification classified the position of Translation Manager as a "Level Two, General and Operations Manager," which had an applicable prevailing wage of $106,288.  Plaintiff's actual salary was $57,000.   On April 24, 2002, Lionbridge informed Ross that it was not willing to raise Plaintiff's salary in an amount sufficient to satisfy the assigned prevailing wage requirement.   At that time Ross indicated that she anticipated that new guidelines from the United States Department of Labor would result in a lowered prevailing wage determination.

Plaintiff again contacted Ross' assistant for information in May 2002.  On May 29, 2002, Ross' assistant informed Plaintiff that the law firm had encountered a problem related to the prevailing wage determination, but did not provide specifics.  Plaintiff again sought information from Ross' assistant on July 15, 2002.  Two days later, Ross' assistant responded that the law firm had been instructed that Plaintiff should contact Lionbridge for information about her case.  On July 22, 2004, in response to Plaintiff's request, Lionbridge told Plaintiff that there still was a problem with the prevailing wage and that it was seeking approval of an alternative wage source.

Plaintiff expressed her concern about the apparent lack of progress on her application to Lionbridge on September 17, 2002.  At that meeting Plaintiff was informed that the prevailing wage determination for the Translation Manager was $106,000.  In order to avoid the prevailing wage determination discrepancy, Plaintiff  was told that Lionbridge would proceed with her green card application if she accepted a demotion to Translator, without a decrease in salary.  Plaintiff declined.

In October 2002, the new guidelines from the United States Department of Labor were

issued.  After reviewing them, Ross contacted a representative with the Colorado Department of Labor Certification and requested that he reconsider the prevailing wage determination in this matter.  Ross subsequently informed Lionbridge that she was unsuccessful in convincing the representative to reconsider.  On October 24, 2002, Lionbridge informed Plaintiff that the new guidelines were not favorable.  In response, Plaintiff suggested tweaking her job duties in order to work around the prevailing wage determination by eliminating her direct reports.  Plaintiff also suggested that she be given the title of Translation Supervisor, and later expressed a willingness to accept a future demotion to Translator after the pendency of the application.  Lionbridge continued to insist, however, that Plaintiff accept an immediate demotion.  Plaintiff alleges that this decision by Lionbridge was based on advice from Ross, and was motivated in part by its awareness that Plaintiff's retention of the Translation Manager position, without amendment to her visa, would cause Lionbridge to be in continued violation of the law that required amendment to Plaintiff's work visa when she was initially promoted in April 2001.

## II. Law

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment should be entered if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett, supra,* 477 U.S. at 324.

<u>III. Legal Malpractice</u>

Defendants Ross and her law firm (collectively, "Ross") seek summary judgment in their favor on Plaintiff's claim against them for legal malpractice (Fifth Claim for Relief). In Plaintiff's claim, she asserts that Ross was negligent and that Ross breached a fiduciary duty of loyalty by representing parties with conflicting interests. As such, Plaintiff's legal malpractice claim asserts both negligence and breach of fiduciary duty claims.

<u>Negligence</u>

As an initial matter, I first address Ross' contention that Plaintiff's claim based in negligence is barred by the applicable statute of limitations. In Colorado, a plaintiff must commence an action for legal malpractice within two years after the cause of action accrues. C.R.S. § 13-80-102(1). "A cause of action for legal malpractice accrues when a plaintiff learns

facts that would put a reasonable person on notice of the general nature of the damage and that the damage was caused by the wrongful conduct of an attorney." *Torrez v. Edwards*, 107 P.3d 1110, 1113 (Colo. App. 2004)(*citing Morrison v. Goff,* 91 P.3d 1050 (Colo. 2004); *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860 (Colo. App. 1998)).

Ross asserts that Plaintiff's negligence claim accrued when Plaintiff:  1) knew that Lionbridge was not going to go forward with her green card application; 2) believed that Ross' conclusions related the prevailing wage determination were erroneous; and 3) she incurred damages.  As such, Ross contends that at a minimum this cause of action accrued when Plaintiff independently hired another attorney in November of 2002 – more than two years prior to her commencement of this claim against Ross in January of 2005.   In response, Plaintiff argues that Lionbridge ultimately refused to take further action on her green card application on January 7, 2003 – the date when Lionbridge's house counsel rejected Plaintiff's final proposed solution to the prevailing wage determination problem.  Since she filed a motion seeking to amend her complaint to add this claim against Ross on January 7, 2005, Plaintiff asserts that her claim was filed within the two-year period mandated by C.R.S. § 13-80-102(1).

"Whether the statute of limitations bars a particular claim is usually a fact question, but if the undisputed facts clearly show that the plaintiff had, or should have had the requisite information as of a particular date, the issue may be decided as a matter of law." *Sulca v. Allstate Ins. Co.,* 77 P.3d 897, 899 (Colo. App. 2003)(citations omitted); *see also Broker House v. Bendelow*, *supra,* 952 P.2d at 863.  The interpretation of when a claim accrues under a statute of limitations is an issue of law.   *Sulca v. Allstate Ins. Co., supra,* 77 P.3d at 899 (*citing Middelkamp v. Bessemer Irrigation Ditch Co.,* 46 Colo. 102, 103 P. 280 (1909)).

Ross asserts that the claim arose when Plaintiff hired another attorney – thus revealing that she knew the facts essential to the cause of action prior to January 2003.  On the other hand, Plaintiff argues that it did not accrue until, at the least, Lionbridge rejected her final proposal to the wage determination problem.   I agree with Plaintiff that she was not on notice of the general nature of her damages until she was aware that Lionbridge would not entertain any other options related to the prevailing wage determination and, as a result, would definitely not be pursuing her green card application.  Although Ross contends that Plaintiff "knew that Lionbridge was not going forward with her green card application when she hired her own counsel," Ross does not contest Plaintiff's assertion that she was not aware, until January 7, 2003, that Lionbridge would not consider her final proposal to solve the prevailing wage determination that prevented Lionbridge from filing her application.  As such, I conclude, as a matter of law,  that Plaintiff's negligence claim for legal malpractice against Ross was filed within the two-year statue of limitations set forth in C.R.S. § 13-80-102(1).

Ross also argues that the uncontested facts establish that she did not owe Plaintiff a duty as her attorney, because neither Ross nor Plaintiff believed that an attorney/client relationship existed between them.

To sustain an attorney malpractice claim founded on negligence, a plaintiff must establish that:  1) the attorney owed a duty of care to the plaintiff; 2) the attorney breached that duty; and 3) the breach proximately caused damage to the plaintiff.   *Giron v. Koktavy,* 124 P.3d 821, 824 (Colo. App. 2005)(*citing Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999)).  "A party must prove the existence of an attorney-client relationship between the complaining party and the lawyer in order to prevail on a claim of legal malpractice." *Mehaffy,*

20

*Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 239 (Colo. 1995); *see also Fleming v. Lentz, Evans, & King, P.C.,* 873 P.2d 38 (Colo. App.1994).

The formation of a relationship between an attorney and his or her client is based upon contract, which may be either express or implied by the conduct of the parties. *Turkey Creek, LLC v. Rosani,* 953 P.2d 1306, 1311 (Colo. App. 1998)(*citing Klancke v. Smith*, 829 P.2d 464 (Colo. App.1991)). The parties must agree on all essential terms of the relationship, as evidenced by the parties' manifestations of mutual assent. *International Tele-Marine Corp. v. Malone & Associates, Inc.,* 845 F.Supp. 1427, 1431 (D. Colo.1994). "If such relationship is to be established by the conduct of the parties, there must be a showing that a person sought and received legal advice from the attorney concerning the legal consequences of the person's past or contemplated action." *Turkey Creek, LLC v. Rosani, supra,* 953 P.2d at 1311 (*citing People v. Morley*, 725 P.2d 510 (Colo. 1986)). The party claiming the relationship, bears the burden of establishing it. *International Tele-Marine Corp. v. Malone & Associates, supra,* 845 F.Supp. at 1431 (*citing Dunham v. Dunham*, 204 Conn. 303, 528 A.2d 1123, 1132 (1987)).

Ross asserts that none of the uncontroverted facts establish that either Ross or Plaintiff believed that an attorney-client relationship existed between them. Plaintiff argues, however, that there is evidence upon which a jury could conclude that such a relationship existed. Plaintiff first points to Ross' deposition testimony in which she indicated that she considered both Lionbridge and Plaintiff to be her clients. Specifically, in response to the question: "Who did you consider your client in this process?" Ross answered: "I considered both of them [Lionbridge and Ms. DerKevorkian] my client." Ross notes, however, that in her "Statement of Changes" to her deposition testimony, Ross clarified her answer to say that "I considered both *would be* my client

21

*if the matter went forward after assessing the case.*" (Emphasis added).

Plaintiff also points to an unfiled and unsigned Entry of Appearance, drafted by Ross and located in her file, that indicated that Ross was entering her appearance as attorney for both Lionbridge and Plaintiff.   In her affidavit Ross avers that she would have filed the draft Entry of Appearance had she proceeded with the amendment of Plaintiff's work visa.  However, since that did not happen, no entry of appearance was filed.  Ross further states that:

> At no time did I believe that I was Ms. DerKevorkian's lawyer.  I anticipated that I might be asked by Lionbridge to represent Ms. DerKevorkian *if* the decision had been made to apply for a green card for her.  In that event, I expect that I would represent both Lionbridge and Ms. DerKevorkian.  My only client on this matter was Lionbridge.

Plaintiff argues that Ross' position that she would have represented both Lionbridge and Plaintiff upon the application, but did not represent Plaintiff before filing the application, supports the inference that Ross "knew that her retention to move forward toward the filing for permanent residence, which included the necessary amendment of [Plaintiff's] visa, was on behalf of both parties."   I disagree.  Furthermore,  Plaintiff's interrogatory responses and deposition testimony was unequivocal that she did not believe that Ross was acting as her attorney at the time, but instead was retained by Lionbridge to work on its employees' visas.  It was only during the course of these proceedings that Plaintiff  "found out that [Ross] was supposed to be representing both Lionbridge and me."

The evidence, when viewed in the light most favorable to Plaintiff, is insufficient to meet Plaintiff's burden of establishing an attorney-client relationship between herself and Ross. Plaintiff does not dispute that the unsigned Entry of Appearance was not to be filed until the decision to

proceed with her application was made.  Plaintiff does not dispute that she neither sought nor received legal advice from Ross concerning the legal consequences of her actions.  In this case, there are no facts that support the formation of an implied contractual relationship, in the form of mutual assent, between Plaintiff and Ross.  *See Turkey Creek, LLC v. Rosani, supra,* 953 P.2d at 1311.  I reject Plaintiff's argument that an attorney-client relationship was established by agency in that it fails to apply the legal standards set forth in Colorado cases to determine the existence of an attorney-client relationship and instead relies upon distinguishable cases from other jurisdictions.  *See Simon v. Wilson,* 684 N.E.2d 791 (Ill .App. 1 Dist. 1997); *dePape v. Trinity Health Systems, Inc.,* 242 F.Supp.2d 585 (N.D. Iowa 2003).

As a result, I conclude that while the existence of an attorney-client relationship is usually a question of fact for the jury, *see International Tele-Marine Corp. v. Malone & Associates, supra*, 845 F.Supp. at 1431, where, as here, the facts viewed in the light most favorable to the Plaintiff fail to reveal any assent to a contractual relationship, Plaintiff fails to meet her summary judgment burden to show that an attorney-client relationship existed.  *See Hoiles v. Alioto*, 345 F. Supp.2d 1178, 1186 (D. Colo. 2004);  *Zimmerman v. Dan Kamphausen Co.,* 971 P.2d 236, 241 (Colo. App. 1998)(affirming entry of summary judgment when the party asserting the relationship failed to demonstrate, as a matter of law, the existence of any attorney-client relationship).

Breach of Fiduciary Duty

Colorado courts recognize that a plaintiff may assert a fiduciary violation against an attorney that is separate and independent from any alleged negligence.  *Moguls of Aspen, Inc. v. Faegre & Benson,* 956 P.2d 618, 621 (Colo. App. 1997); *see also Aller v. Law Office of*

*Schriefer*, 2005 WL 1773878  (Colo. App. 2005).

However, breach of the duty of loyalty, breach of fiduciary duty and negligence claims that are predicated on the existence of an attorney-client relationship fail, as a matter of law, if there was no such relationship.  *International Tele-Marine Corp. v. Malone & Associates, Inc., supra*, 845 F.Supp. at 1431; *see also Martinez v. Badis*, *supra*, 842 P.2d at 251-52 ("[b]reach of fiduciary duty claims are in some, but not all, contexts basically negligence claims incorporating particularized and enhanced duty of care concepts often requiring the plaintiff to establish the identical elements that must be established by a plaintiff in negligence actions").   Because I have determined that Plaintiff has not established a genuine issue of material fact that an attorney-client relationship existed, I also conclude that Plaintiff's claim fails to the extent Plaintiff asserts an independent claim for breached of a fiduciary duty.

## IV. Conclusion

Because Plaintiff cannot prove the existence of an attorney-client relationship based on the evidence viewed in her favor, I conclude that she cannot prevail on her legal malpractice claim based on either negligence or breach of fiduciary duty and, thus, summary judgment in Ross' favor on this claim is warranted.

ACCORDINGLY, for the reasons stated above, it is therefore ORDERED that:

1)  Lionbridge Technologies, Inc., d/b/a Lionbridge U.S., Inc.'s, Motion for Summary Judgment **[DOC # 46]** is DENIED IN PART and GRANTED IN PART, as follows:

A. Plaintiff's First Claim For Relief (breach of contract) and Second Claim For Relief (promissory estoppel) against Defendant Lionbridge survive summary judgment, but Plaintiff may not seek non-economic damages related to these claims;

B.  Plaintiff's Third Claim for Relief (negligence) against Defendant Lionbridge is DISMISSED WITH PREJUDICE; and

C. Plaintiff's Fourth Claim for Relief  (breach of fiduciary duty) against Defendant Lionbridge survives summary judgment, including non-economic damages.

2) Sharryn E. Ross and Ross, Martel & Silverman, LLP's, Motion for Summary Judgment **[DOC #70]** is GRANTED and, as a result, Plaintiff's Fifth Claim for Relief  (legal malpractice) against Defendants Ross and Ross, Martel & Silverman, LLP's is DISMISSED WITH PREJUDICE, and Defendants Ross and Ross, Martel & Silverman are AWARDED their costs.

Dated: January   26  , 2006, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
_____
LEWIS T. BABCOCK, CHIEF JUDGE