IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 04-cv-01160-LTB-CBS

ISABELLE DerKEVORKIAN,

    Plaintiff,

v.

LIONBRIDGE TECHNOLOGIES, INC., d/b/a LIONBRIDGE US, INC.,
SHARRYN E. ROSS, and
ROSS, MARTEL & SILVERMAN, LLP,

    Defendants.
_____

ORDER
_____

This matter is before me on Plaintiff's Motion for New Trial or to Alter or Amend Judgment Regarding Summary Judgment Dismissing Fifth Claim for Relief Against Ross Defendants (#89), filed on January 30, 2006, by Plaintiff, Isabelle DerKevorkian, related to her claim against Defendants, Sharryn E. Ross and Ross, Martel & Silverman, LLP. Oral argument would not materially assist me in the determination of this motion. After consideration of the motion, as well as all related pleadings, I DENY the motion for the following reasons.

*I. Background*

Plaintiff, who is a citizen of France, filed this lawsuit seeking damages related to her former employer's failure to adequately "assist and support" her in obtaining her permanent resident status, or her "green card," as part of its Permanent Resident Program. As part of the program, Plaintiff agreed to allow legal counsel retained by her employer, Defendants Sharryn E. Ross and Ross, Martel & Silverman, LLP, handle her green card application. In her complaint,

Plaintiff asserts breach of contract, promissory estoppel, negligence and breach of fiduciary duty claims against her employer. After amending her complaint on January 7, 2005, Plaintiff alleged a legal malpractice claim against Defendants Ross and her law firm (collectively "Ross") for both negligence and breach of fiduciary duty.

On January 29, 2006, I granted Defendant Ross' motion for summary judgment and dismissed Plaintiff's legal malpractice claim. I concluded that the evidence, when viewed in the light most favorable to Plaintiff, was insufficient to meet her burden of establishing an attorney-client relationship between herself and Ross pursuant to Colorado law. Plaintiff has filed the motion at issue seeking reconsideration of this ruling. She contends that I have misapplied both the summary judgment standard of review and Colorado law to improperly conclude that she cannot establish that an attorney-client relationship existed.

## II. Law

In this motion Plaintiff seeks relief pursuant to Fed. R. Civ. P. 59(e) which allows for the amendment of a judgment within 10 days of the day it was entered. *See All West Pet Supply Co. v. Hill's Pet Products Div., Colgate-Palmolive Co.*, 847 F.Supp. 858, 860 (D. Kan. 1994)("a motion for reconsideration of an order granting summary judgment is appropriately brought under Rule 59(e) as a motion to alter or amend"). Grounds for a motion to alter or amend include that the trial court made a manifest error of fact or law. *Id.*

## III. Analysis

Plaintiff argues that I made errors of both law and fact when I dismissed her legal malpractice claim against Defendant Ross and her law firm after determining that Plaintiff could not established a genuine issue of material fact that an attorney-client relationship existed. An

2

attorney-client relationship may be formed, under Colorado law, upon a contract that is either express or implied from the conduct of the parties. "In either case, the parties' must agree on all essential terms of the relationship, as evidenced by the parties' manifestations of mutual assent." *International Tele-Marine Corp. v. Malone & Associates, Inc.,* 845 F.Supp. 1427, 1431 (D.Colo. 1994). I determined that in this case there was no attorney-client relationship formed, as a matter of law, because the evidence was undisputed that Plaintiff did not believed that Ross represented her and the evidence was insufficient for a jury to find that Ross believed that she represented the Plaintiff. Plaintiff challenges this ruling.

Plaintiff first argues that there is sufficient evidence from which a jury could conclude that Ross believed that she represented Plaintiff. Plaintiff refers me to Ross' deposition in which she was asked about her determination that Plaintiff's work visa should have been amended when Plaintiff "switched from project manager to manager of translation." Ross was then asked "Who did you consider your client in this process?" Ross responded "I considered both of them [Lionbridge and Ms. DerKevorkian] my client." Subsequently, in her "Statement of Changes," Ross amended her responses "in order to make this deposition more nearly conform to the facts." *See* Fed. R. Civ. P. 30(e). As relevant here, Ross amended her above response to state that "I considered both *would be* my client *if the matter went forward after assessing the case.*" Ross did not claim this change was a transcription error, but rather that the reason for the change was "[c]larification of [the] answer." *See* Fed. R. Civ. P. 30(e)(a deponent may review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them); *Rios v. Welch,* 856 F.Supp. 1499, 1502 (D.Kan. 1994)(ruling that a party is not permitted to "virtually rewrite" deposition

3

responses simply by invoking the benefits of Fed. R. Civ. P. 30(e)), *aff'd by, Rios v. Bigler*, 67 F.3d 1543 (10th Cir. 1995). In addition, Plaintiff refers me to "circumstantial evidence" consisting of Ross' actions that could be interpreted as assent to an attorney-client relationship with Plaintiff.

Assuming, *arguendo*, that Plaintiff has set forth sufficient evidence of Ross' asset to the attorney-client relationship, Plaintiff cannot point to any evidence indicating that she believed that Ross was acting as her attorney at the time that Ross discovered that Plaintiff's work visa had not been properly amended. In fact, it is undisputed that Plaintiff's interrogatory responses and deposition testimony was unequivocal that she did not believe that Ross was acting as her attorney at the time, but instead was retained by Lionbridge to work on its employees' visas. It was only during the course of these proceedings that Plaintiff "found out that [Ross] was supposed to be representing both Lionbridge and me." Because Plaintiff never believed that Ross was acting as her attorney, no implied attorney-client relationship was formed. Although whether a client-lawyer relationship is formed is usually one of fact, here Plaintiff can point to no evidence from which a reasonable jury could conclude that she assented to an attorney-client relationship with Ross. *See Schmidt v. Frankewich,* 819 P.2d 1074, 1078 (Colo. App. 1991)(ruling that when the clients' representative "did not believe" that the attorney defendants in a malpractice claim were representing the individual plaintiffs, they did not agree or assent to the terms of the alleged representation and thus a contract between the parties could not be established), *cert. denied*, Oct. 28, 1991.

Plaintiff further argues that I "mistakenly held that the attorney-client relations requires a showing that the client sought and/or received legal advice from the attorney." In so ruling, I

relied upon *Turkey Creek, LLC v. Rosania,* 953 P.2d 1306, 1311 (Colo. App. 1998), in which the Colorado Court of Appeals ruled that for an implied attorney-client relationship to be established by the conduct of the parties, there must be a showing that a person sought and received legal advice from the attorney.

I reject Plaintiff's interpretation that, under Colorado law, such facts would provided only a *basis* for proving the existence of attorney-client relationship. The Colorado Court of Appeals has issued two cases in which it is clear that "to establish such a relationship based upon conduct *requires* a showing that a person seeks and receives legal advice from an attorney regarding the legal consequences of the person's past or contemplated actions." *Klancke v. Smith*, 829 P.2d 464, 466 (Colo. App. 1991)(emphasis added), *cert. denied*, May 18, 1992; *see also Turkey Creek, LLC v. Rosania, supra,* 953 P.2d at 1311 ("there *must* be a showing that a person sought and received legal advice from the attorney concerning the legal consequences of the person's past or contemplated action")(emphasis added); *see also Med Safe Northwest, Inc. v. Medvial, Inc.*, 1 Fed.Appx. 795, 801 (10th Cir. 2001)(not selected for publication in the Federal Reporter); *but see People v. Morley*, 725 P.2d 510, 517 (Colo. 1986)(an inferred attorney-client relationship is "sufficiently established when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions"). I also reject Plaintiff's argument that such requirement was met here because although she never *asked* for a legal opinion from Ross, the evidence demonstrates that she sought Ross' legal guidance and that Ross provided legal advice to Plaintiff through her employer, Defendant Lionbridge.

Furthermore, I remain unconvinced by Plaintiff's argument that an attorney-client relationship was created without her knowledge by her employer. Plaintiff has failed to provide

5

me with Colorado authority that supports her contention that "an attorney-client relationship can be created by an agent with apparent authority, without the knowledge of the client." Plaintiff refers me to *Hoiles v. Alioto,* 345 F.Supp.2d 1178, 1186 (D.Colo. 2004), in which the court rejected an "apparent authority" basis for an contract claim for attorney fees. In that case the court found that the attorney could not collect fees for his work selling stock owned by the ex-wife and daughters of his client because: 1) they did not sign the contingency fee agreement; 2) the claim failed to aver facts indicating any assent to a contractual relationship between the attorney and the ex-wife and daughters; and 3) an "apparent authority" basis for a contract claim failed because the claim lacked any factual assertion that the alleged principals (the ex-wife and daughters) gave any indication to the attorney that his client was acting as their agent. *Id.* Although the *Hoiles* court applied an agency theory to determine if an attorney-client relationship was created, the court was not faced with a factual situation in which a relationship was allegedly created without the principal-client's knowledge, as is the issue here. In addition, Plaintiff's reliance on cases from other jurisdictions in which an attorney-client relationship was formed by an agent are factually distinguishable. *See e.g. Simon v. Wilson*, 684 N.E.2d 791, 801 (Ill .App. 1 Dist. 1997)(finding that husband, as a fiduciary of his wife who was in declining health, created an attorney-client relationship because wife's power of attorney constituted "explicit authorization for [the attorney] to act upon her behalf"); *dePape v. Trinity Health Systems, Inc.*, 242 F.Supp.2d 585, 611 (N.D. Iowa 2003)(where the parties did not dispute that an attorney-client relationship existed between an attorney who handled the plaintiff's failed attempt to immigrate for employment with the defendant). As a result, I conclude that none of the authority cited by Plaintiff supports her position that, under Colorado law, an agent may enter into an attorney-client

relationship for an unknowing principal under the facts alleged here.

Finally, to the extent that Plaintiff makes new arguments in this motion based on the unique dual-representation of immigration attorneys hired by an employer, such argument was made for the first time in this motion and, as such, will not be addressed here. *See Steele v. Young,* 11 F.3d 1518, 1520 N.1 (10th Cir. 1993)(ruling that an Fed. R. Civ. P. 59(e) motion "cannot be used to expand [a] judgment to encompass new issues which could have been raised prior to issuance of [the] judgment"); *see also Evolution, Inc. v. SunTrust Bank,* 342 F.Supp.2d 943, 964 (D. Kan. 2004); Charles Alan Wright & Aurthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2810.1.

Therefore, I again conclude that the evidence, when viewed in the light most favorable to Plaintiff, is insufficient to meet Plaintiff's burden of establishing an attorney-client relationship between herself and Ross. *Zimmerman v. Dan Kamphausen Co.,* 971 P.2d 236, 241 (Colo. App. 1998)(affirming entry of summary judgment when the party asserting the relationship failed to demonstrate, as a matter of law, the existence of any attorney-client relationship). "[A] motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court." *All West Pet Supply Co. v. Hill's Pet Products Div., supra,* 847 F.Supp. at 860.

ACCORDINGLY, for the reasons stated above, I DENY Plaintiff's Motion for New Trial or to Alter or Amend Judgment Regarding Summary Judgment Dismissing Fifth Claim for Relief Against Ross Defendants [**#89**].

Dated: April __3__, 2006, in Denver, Colorado.

                                              BY THE COURT:

                                              s/Lewis T. Babcock
                                              LEWIS T. BABCOCK, CHIEF JUDGE