IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No.  04-cv-01160-LTB-CBS

ISABELLE DerKEVORKIAN,

       Plaintiff,

v.

LIONBRIDGE TECHNOLOGIES, INC., d/b/a LIONBRIDGE US, INC.,

       Defendant.

_____

# ORDER

_____

This matter is before me on the following post-judgment motions:  1)  Defendant

Lionbridge Technologies, Inc.'s Motion For New Trial Pursuant to Fed. R. Civ. P. 59(a), To

Alter Or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e), or to Order Remittitur **[Doc

#133]**; and  2) Plaintiff Isabelle DerKevorkian's Motion to Alter or Amend Judgment **[Doc #

129]**.  The issues are fully briefed and oral argument would not materially assist me in my

determination.  For the following reasons, I GRANT IN PART and DENY IN PART both

motions.

## I. BACKGROUND

Plaintiff, a citizen of France, filed this lawsuit claiming that Defendant, her former

employer, failed to adequately "assist and support" her in obtaining permanent resident status, or

her "green card," as part of its Permanent Resident Program.   At the time of trial, Plaintiff's

claims were for breach of contract, breach of fiduciary duty, and promissory estoppel.   The jury

found in favor of Plaintiff on both her breach of contract and breach of fiduciary duty claims.  As

a result, I did not rule on the alternative promissory estoppel claim before the court.  The jury

awarded Plaintiff  $313,570.20 in economic damages on both the breach of contract and breach of

fiduciary duty claims.  In addition, the jury awarded her $1,000,000.00 in non-economic damages

on the breach of fiduciary duty claim.

## II. DEFENDANT'S MOTION FOR NEW TRIAL

In its post-judgment motion, Defendant first requests a new trial pursuant to Fed. R. Civ.

P. 59(a), which allows me to order a new trial on all or part of the issues "in an action in which

there has been a trial by jury, for any of the reasons for which new trials have heretofore been

granted in actions at law in the courts of the United States."  *Id.*  Grounds for seeking a new trial

include prejudicial error of law and when the verdict is against the weight of the evidence.  *See* 11

Charles A. Wright et al., *Federal Practice and Procedure* § 2805 (2d ed. 1995).

A court should exercise its discretion to grant a new trial whenever, in its judgment, this

action is required in order to prevent injustice.  *Plaut v. Estate of Rogers,* 959 F.Supp. 1302,

1304 -1305 (D. Colo. 1997).   As a result, a new trial should not be granted "unless it is

reasonably clear that prejudicial error has crept into the record or that substantial justice has not

been done."  *Id.*  (*quoting* Wright, et al., *supra*, § 2803); *see also*  Fed. R. Civ. P. 61 ( "[n]o error

. . . is ground for granting a new trial . . . unless refusal to take such action appears to the court

inconsistent with substantial justice.")  A motion for a new trial ultimately invokes the sound

discretion of the trial court.  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556,

104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th

Cir.1993); *Miller v. Heaven*, 922 F.Supp. 495, 499 (D. Kan. 1996)(a trial court has broad

2

discretion in deciding whether to grant or deny a motion for a new trial).  They are not regarded with favor and should only be granted with great caution.  *See Deters v. Equifax Credit Info. Servs., Inc.,* 981 F. Supp. 1381, 1385 (D. Kan. 1997)(*citing U.S. v. Kelley*, 929 F.2d 582, 586 (10th Cir.1991)).

**Mitigation of Damages**

Defendant first seeks a new trial on the basis that I made a substantial and prejudicial error of law when I declined to instruct the jury that Plaintiff's failure to accept a demotion constituted a failure to mitigate her damages.  Under the circumstances, I discern no error.

During trial I ruled that Defendant was entitled to a jury instruction on its affirmative defense that Plaintiff failed to mitigate her damages because evidence was presented that she may not have adequately sought alternative employment.  However, I agreed with Plaintiff that her refusal to take Defendant's offer of an immediate demotion – from Manager of Translation to Translator –  did not constitute a failure to mitigate her damages.  While Plaintiff's theory of her case was a breach of contractual duties outside of the traditional employer/employee relationship – as opposed to a breach of an employment contract – I concluded that the requirement that the offered position must be "substantially equivalent," as articulated in *Fair v. Red Lion Inn*, 943 P.2d 431 (Colo. 1997), was applicable here.  As such, I ruled that Defendant was not entitled to its proffered  jury instruction indicating that the affirmative defense of mitigation of damages "is proved if you find the following has been proven by a preponderance of the evidence:  Isabelle DerKevorkian refused to accept an offer from Lionbridge for a translator position."

Defendant now maintains that my ruling was erroneous in that the circumstances of this case did not justify taking this issue from the jury.  Specifically, Defendant argues that the

"substantially equivalent" requirement articulated in *Fair v. Red Lion Inn, supra,* is not applicable here because that case dealt with a wrongful discharge. Instead, Defendant asserts that the general mitigation rule – a plaintiff's failure to take reasonable steps or make reasonable effort to reduce damages – is applicable. And, in this case, Defendant argues that a jury could have concluded that it was reasonable for Plaintiff to accept the demotion to mitigate her damages because there was evidence that: a) the primary purpose of the contract from Plaintiff's perspective was to help her remain in the United States; b) Plaintiff's pay would not have been reduced; c) Plaintiff admitted that she would have accepted a future demotion; and d) Plaintiff herself proposed a reduction of job responsibilities as a possible solution to the problems with her green card application.

First, I note that Defendant's proposed jury instruction on this issue was incorrect, under the legal argument it now advances, in that it would have directed the jury to find that Plaintiff necessarily failed to mitigate her damages by refusing to immediately accept the demotion. Defendant's tendered instruction indicated that its affirmative defense was "proved" if the jury found that Plaintiff "refused to accept an offer from Lionbridge for a translator position" – a fact that was not disputed by Plaintiff at trial.

Furthermore, as I acknowledged when making my ruling, the *Fair v. Red Lion Inn* case does not directly address the specific issue here. In that case the Colorado Supreme Court indicated that "[a] plaintiff's failure to mitigate damages is excused . . . if mitigation would require inordinate or unreasonable measures or if there were reasonable grounds for the failure to mitigate." 943 P.2d at 437. The court went on to apply the rule, as articulated in discrimination cases, that absent special circumstances "an employee is obligated to minimize his damages by

accepting his former employer's offer of reinstatement to a position 'substantially equivalent' to his previous job." *Id.* at 440.  The court defined a substantially equivalent offer of employment as affording "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the . . . claimant [was] terminated." *Id.* at 443 (*quoting Sellers v. Delgado Community College*, 839 F.2d 1132, 1138 (5th Cir. 1988)).

Although the employer's breach in that case was of an employment contract, as opposed to an obligation related to or in the context of the parties' employer/employee relationship, applying the standards set forth in the *Fair v. Red Lion Inn* case here did not constitute error. The pivotal question in both instances is essentially the same – when is it reasonable for an employee, who has been injured by her employer's breach, to reject alternative employment in order to minimize her damages.  The Colorado Supreme Court applied the test that the offered position must be "substantially equivalent," and I applied the same test and analysis in this case. Defendant has not referred me to a Colorado case on point, and my research has not revealed any. As such, I conclude that my decision to apply the analysis of *Fair v. Red Lion Inn, supra,* to this case for the purposes of assessing Plaintiff's duty to mitigate does not constitute a clear or manifest error of law.

To the extent that Defendant challenges my conclusion that the position offered to Plaintiff was not substantially equivalent, the undisputed evidence was that while the job would have been for the same pay and benefits, it was incontestably a demotion in title and was comprised of different job responsibilities and working conditions.  As argued by Plaintiff, if the evidence was that if Defendant offered to remove Plaintiff's direct reports or assign a minor change in title, a

failure to mitigate instruction on Plaintiff's rejection might have been proper on the basis that the position was substantially equivalent.  But that was not the evidence in this case.

In addition, I further find that any prejudice would not rise to the level of being inconsistent with substantial justice.  Defendant argues that the jury "had no way to account for Plaintiff's refusal" to accept Defendant's offer of a demotion and "had no idea that it could consider that fact in determining her damages."  However, contrary to Defendant's assertion, this evidence was not unconnected to any jury determination.  It was relevant to the determination of whether both  parties substantially performed or complied with the terms of a contract, and whether Defendant breached its fiduciary duty.  For these reasons, I reject Defendant's request for a new trial on the basis that I made a substantial and prejudicial error of law when I ruled that it could not instruct the jury that Plaintiff's refusal to accept a demotion necessarily constituted a failure to mitigate her damages.

**Economic Loss Rule**

Defendant next asserts that it is entitled to a new trial on the basis that I erred when ruling that Plaintiff's breach of fiduciary duty claim was not barred by the economic loss rule.  Colorado's economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

Defendant first asserts that because the duty alleged in this case was called for and governed by the contract, the economic loss rule applied to bar Plaintiff's tort claim for breach of a fiduciary duty.  *See Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267, 1270 (Colo. 2000)(ruling there

is no independent duty of care owed to the plaintiff absent the duties imposed by the contractual relationship between the parties).   However, as I ruled prior to trial, Plaintiff sufficiently alleged a breach of fiduciary duty claim based on a confidential or trust relationship independent of the parties' contractual relationship.  *See Wisehart v. Maganck,* 66 P.3d 124, 129 (Colo. App. 2002). As a result, I concluded that the economic loss rule did not entitle Defendant to summary judgment on Plaintiff's breach of fiduciary duty claim.  *See A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.,* 114 P.3d 862, 866 (Colo. 2005)(finding the economic loss rule inapplicable based on an independent duty owed by builders to homeowners).

Defendant maintains that Plaintiff could not have established an independent fiduciary duty claim because Colorado law requires that a "confidential relationship [be] established prior to the date of the transaction that gives rise to the claim."  *Vikell Investors Pacific, Inc. v. Hampden, Ltd.*, 946 P.2d 589, 597 (Colo. App. 1997).  Defendant raises this legal argument for the first time in this motion.  At trial, Defendant did not object to instructing the jury on the breach of fiduciary claim and, in fact, proffered a jury instruction for breach of a confidential relationship fiduciary duty, based on C.J.I. Civil 4th 26:3, which was given to the jury as tendered.  As such, I agree with Plaintiff that Defendant cannot now claim error when it failed to object and, in fact, proffered the jury instruction it now contends was legally insufficient.  *See Mantle Ranches, Inc. v. U.S. Park Service,* 950 F.Supp. 299, 300 (D. Colo. 1997)(a motion under Fed. R. Civ. P. 59 is not a license for a losing party's attorney to "make legal arguments that could have been raised before"); *see also Wilkins v. Packerware Corp.,* 238 F.R.D. 256, 269 (D. Kan. 2006)(failure to object to an allegedly improper jury instruction foreclosed review on a motion for new trial).

7

Furthermore, the evidence at trial was that during the duration of her employment, starting in 1997, Plaintiff trusted Defendant to represent her interests in the handling of various filings in order for her to continue to work in the United States.  From the beginning of their employment relationship, at least prior to the time they entered into a contract related to Plaintiff's green card application, Defendant had a high degree of control and Plaintiff placed a significant amount of trust and confidence that Defendant would look after her best interests related to her ability to work in the United States as its employee.  This continuing relationship culminated with the failed green card application.

As such, I conclude that when reviewing the evidence presented in the case, and under these circumstances, Defendant owed Plaintiff a distinct confidential fiduciary relationship independent of and prior to the contractual duty related to her green card application.  *See Command Commc'ns, Inc. v. Fritz Cos., Inc.,* 36 P.3d 182, 186  (Colo. App. 2001)(the court determines as a matter of law the nature and scope of the duty owed by a fiduciary . . . [and t]he fact finder decides whether there has been a breach of any fiduciary duty defined by the court")(citations omitted); *see also Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1498 (D. Colo. 1988)(recognizing that although no Colorado court has ever recognized a fiduciary duty owed by an employer to its employee, the court acknowledged that "such a relationship could certainly be found if other facts were present").  As a result, I conclude that Defendant is not entitled to a new trial on the basis that I erred when I ruled that Plaintiff's breach of fiduciary duty claim was not barred by the economic loss rule.

## Against Clear Weight of the Evidence

8

I also reject Defendant's related argument that it is entitled to a new trial on the basis that the jury verdict on Plaintiff's breach of fiduciary duty claim was against the clear weight of the evidence.

To assess whether a jury verdict is against the weight of the evidence, the standard is whether the verdict is "clearly, decidedly or overwhelmingly against the weight of the evidence." *Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir.1995)(*quoting Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir.1986)).  "A new trial is not warranted simply because the court would have reached a different verdict."  *Hillman v. United States Postal Serv.*, 169 F.Supp.2d 1218, 1222 (D. Kan. 2001).  A district court's decision on a motion for a new trial, based on the theory that the verdict is against the weight of the evidence, will not be disturbed unless it is a manifest abuse of discretion.  *Brown v. McGraw-Edison Co.*,736 F.2d 609, 616 (10th Cir. 1984); *see also Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997).

Defendant asserts that the only evidence that Plaintiff placed any "trust" in Defendant was elicited in response to the handling of her application for her green card, which constituted a contractual duty unrelated to any fiduciary duty.  Defendant also argues that the clear weight of the evidence showed that Plaintiff did not "relax [her] care and vigilance" with respect to that process in that she routinely inquired about the status of her application, did related internet research, and contacted an attorney when she got concerned about its progress.

I disagree that this evidence leads to the conclusion that the jury's breach of fiduciary duty verdict is clearly, decidedly or overwhelmingly against the weight of the evidence.  Rather, as

discussed above, I agree with Plaintiff that there was sufficient evidence presented to establish a special relationship that would give rise to a fiduciary duty not recognized in the usual employment relationship, as well as a breach of that duty. *See generally A.C. Excavating v. Yacht Club II Homeowners Ass'n, supra,* 114 P.3d at 866; *Wisehart v. Meganck, supra*, 66 P.3d at 129.

### III. DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT

Fed. R. Civ. P. 59(e) allows for the amendment or alteration of a judgment in the nature of reconsideration of a decision on the merits. *See Buchanan v. Stanships, Inc.* 485 U.S. 265, 267, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988); *Mantle Ranches v. U.S. Park Service, supra,* 950 F.Supp. at 300. There are three primary grounds justifying reconsideration under Fed. R. Civ. P. 59(e): 1) an intervening change in the controlling law; 2) the availability of new evidence; and, as is relevant here, 3) the need to correct clear error or prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* My ruling on a Fed. R. Civ. P. 59(e) motion is discretionary. *See Miscall v. McGraw Hill Broad. Co., Inc.,* 323 F.3d 1273, 1287 (10th Cir. 2003)(requiring a reversal under Fed. R. Civ. P. 59(e) only "in cases of a clear error of judgment or an excess of the bounds of permissible choice in the circumstances").

**Non-Economic Damages/Worker's Compensation Exclusivity**

Defendant first maintains that the jury's non-economic damages award of $1,000,000 on the breach of fiduciary duty claim violates the exclusivity provisions of the Colorado Workers' Compensation Act and, as such, should be reduced to zero.

On summary judgment I determined that claims for tort injuries to economic interests and harm affecting a proprietary or financial interest are not "personal injuries" within the purview of the Colorado Workers' Compensation Act.  As a result, I ruled that Plaintiff's tort-based claim for breach of fiduciary duty was not precluded by the Act.  *See Serna v. Kingston Enters.,* 72 P.3d 376, 379 (Colo. App. 2002)(under the Act, an employee does not surrender any cause of action for injuries apart from "personal injuries," which are defined as "job-related physical or mental injuries of an employee"); Colo. Rev. Stat. § 8-41-104 (under the Act an employee surrenders "any cause of action, action at law, suit in equity, or statutory or common-law right, remedy, or proceeding for or on account of [his or her] personal injuries or death").

Defendant asserts that the jury's award of $1,000,000 for non-economic damages on the breach of fiduciary duty claim is, on its face, compensation for the "mental injuries of an employee."  Because personal injuries, as set forth in § 8-41-104, include an employees' mental injuries, Defendant argues that the $1,000,000 award is barred by the exclusivity provisions of the Act.  *See Serna v. Kingston Enters., supra,* 72 P.3d at 379 (concluding that term "personal injuries" in the Act "refer to the job-related physical or mental injuries of an employee").

However, I disagree with Defendant's characterization that the jury's award for non-economic damages constituted  "personal injuries" suffered by Plaintiff as a result of her emotional distress based her fellow employees mishandling her green card application.  The

11

emotional distress incurred by Plaintiff, and related damages awarded as compensation therefore, were a result of Defendant's breach of its fiduciary duty; it was not a mental injury incurred as a result or arising out of a work-related accident, injury or occupational disease. *See Luna v. City & County of Denver,* 537 F.Supp. 798, 801 (D. Colo. 1982)("personal injury" under the Act does not include damages "which are based mainly on mental suffering and humiliation, and only peripherally on physical suffering and pain"); *Serna v. Kingston Enters., supra,* 72 P.3d at 379 (defining "personal injury" as "any harmful change in the body")(*quoting 3Larson's Workers' Compensation Law* ch. 55 at 55-1 (2002). I likewise disagree with Defendant's assertion that Plaintiff's request for prejudgment interest on the non-economic damages award pursuant to Colo. Rev. Stat. § 13-21-101(1), as set forth in her Motion to Alter or Amend Judgment, amounts to a concession that it constituted an award for "personal injuries" that, in turn, implicates the exclusivity provisions in the Act. See discussion *infra.*

**Statutory Limit/Cap on Non-Economic Damages**

Defendant also asserts that the $1,000,000 jury award for non-economic damages must be reduced pursuant to the damages limitation or cap for non-economic loss as set by the Colorado legislature in Colo. Rev. State § 13-21-102.5(3)(a). Plaintiff agrees that the award is limited by the statute, but disagrees as to the applicable amount.

Section 13-21-102.5(3)(a) provides that in a civil action like this one, the total damages for non-economic loss of injury "shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor [and i]n no case shall the amount of non-economic loss or injury damages exceed five hundred thousand dollars." The

12

parties agree that the $250,000 and $500,000 limits have since been increased to $366,250 and $732,500, respectively.  Defendant maintains, and I agree, that Plaintiff's jury award for non-economic damages must be limited to $366,250 under § 13-21-102.5(3)(a).  I am not convinced by Plaintiff's argument that there is clear and convincing evidence in this case providing justification for an increase in the cap to $732,500.

The presumptive limit for non-economic damage awards can be exceeded only if I find justification to do so by "clear and convincing evidence;" exceeding the presumptive limit occurs only in the case of "extreme circumstances." *James v. Coors Brewing Co.,* 73 F.Supp.2d 1250, 1253 (D. Colo. 1999).  "Legislative history of this section shows that the clear and convincing exception is a 'relief valve' in cases involving 'seriously or desperately' injured plaintiffs."  *Id.* (*citing General Elec. Co. v. Niemet*, 866 P.2d 1361, 1365 (Colo. 1994)).

I conclude that this case does not present extreme circumstances resulting in clear and convincing evidence that would permit me to exceed the presumptive cap contained in § 13-21-102.5(3)(a).  I disagree with Plaintiff that the failure of her dream to work and live in America citizen – even in the context of her commitment, dedication and loyalty as Defendant's employee and its actions on her behalf related to her work status – amounts to circumstances that would allow me to exceed the statutory cap.  *Compare James v. Coors Brewing Co., supra,* 73 F.Supp.2d at 1254 (concluding a plaintiff's defamation injuries had not been shown to reach the level of "serious" or "desperate"injury necessary to exceed the presumptive cap); *with Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 639 (Colo. App. 1998)(ruling that clear and convincing evidence supported an award above the presumptive limit for negligent infliction of emotional distress when an expert testified that the plaintiff's distress could have caused her multiple

13

sclerosis to become symptomatic and that there was a probability she would "end up in a wheelchair").  As a result, I conclude that the jury's non-economic damages award of $1,000,000 should be limited to $366,250 in this case pursuant to § 13-21-102.5(3)(a).

## IV. DEFENDANT'S MOTION FOR REMITTITUR

Finally, Defendant seeks a remittitur of the jury award for economic damages.  A judicial remittitur is "[t]he process by which a court reduces or proposes to reduce the damages awarded in a jury verdict." *Belfor USA Group, Inc. v. Rocky Mountain Caulking and Waterproofing, LLC*, ___ P.3d. ___, 2006 WL 2291173, page 3 (Colo. App. 2006), *cert. denied* 2006 WL 3703931 (Colo. Dec. 18, 2006)(*quoting Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 582 (Colo. 2004)).  "Where a verdict is excessive against the weight of the evidence, the court may order a remittitur or direct that there be a new trial if plaintiff refuses to accept it." *Millazzo v. Universal Traffic Serv., Inc.*, 289 F.Supp.2d 1251, 1256 (D. Colo. 2003).

"The amount of damages awarded by a jury may not be disturbed unless it is completely without support in the record." *Belfor USA Group v. Rocky Mountain Caulking, supra; see also Hudson v. Smith,* 618 F.2d 642, 646 (10th Cir. 1980) (a court should sustain the jury's award unless "it is clearly erroneous, or there is no evidence to support it").  Remittiturs are committed to the sound discretion of the trial court.  *Royal College Shop v. Northern Ins. Co.,* 895 F.2d 670, 677 (10th Cir.1990); *Millazzo v. Universal Traffic Serv., supra,* 289 F.Supp.2d at 1256.

Defendant requests a remittitur order on the basis that the jury award of  $313,570.20 for economic damages was not supported by evidence presented at trial.  Specifically, Defendant argues that the evidence was that Plaintiff was out of work for approximately 25 months and that the highest compensation Plaintiff suggested was $83,000 a year, for a total of approximately

14

$172,918 in economic damages for lost wages.  Defendant also argues, without challenge from Plaintiff, that these damages should be reduced by the $6000 she earned doing contract work, but then are off-set by her consequential damages, which Plaintiff testified were between $5500 and $6000.  As a result, Defendant requests that I order a new trial on economic damages, unless Plaintiff accepts a remittitur to $172,918, an amount it contends is supported by the evidence.

In response, Plaintiff acknowledges that it is unclear how the jury came up with its award of economic damages.  However, Plaintiff postulates that the jury could have applied a yearly wage of $106,288, which was the prevailing wage assigned to her position by the State of Colorado, to conclude that her lost wages were $221,433.  In addition, Plaintiff speculates that the jury could have given her damages for lost benefits, as well as the adverse effect on her social security and retirement benefits.

Although the amount of damages to be awarded is a matter within the sole province of the jury, it may disturbed when it is completely without support in the record.  *Hauser v. Rose Health Care Systems*, 857 P.2d 524 (Colo. App.1993).   In this case, although I agree with Defendant that neither party argued that it was required or even that it was reasonable to pay Plaintiff a salary of $106,288, there was evidence in the record in order to support such a determination by the jury.  However, I further agree with Defendant that there was no evidence presented at trial that could support a damage award based on Plaintiff's suggestion that the jury may have awarded additional damages for loss of employment, social security and retirement benefits.  There was no evidence presented that could allow the jury to calculate an amount sufficient to permit a reasonable estimation of damages for such economic loses.  *See Hughes v. Regents of University of Colorado,*  967 F.Supp. 431, 437 (D. Colo. 1996)(on remittitur, the court must

15

determine whether there is a rational relationship between the specific injury sustained and the amount of damages awarded").

Therefore, because the jury award of economic damages in excess of  $221,433 is not supported by any evidence presented at trial, I will grant Defendant's request for a remittitur.  As such, I will order a new trial on economic damages, unless Plaintiff accepts a remittitur to $221,433.

## V.  PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

**Interest on Non-Economic Award**

In her post-judgment motion, Plaintiff first maintains that the prejudgment interest amount applicable to her non-economic award should be 9% per annum and should start on October 1, 2002, which is the date that her action first accrued pursuant to Colo. Rev. Stat. § 13-21-101(1), which provides for prejudgment interest on "damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person . . .".

Defendant does not directly challenge the applicability of § 13-21-101(1), but instead its sole argument is that the entire non-economic award is barred by the exclusivity provisions of Colorado's Workers' Compensation Act.  Defendant asserts that Plaintiff 's argument in support of applying prejudgment interest under § 13-21-101(1) results in a conclusion that her personal injuries occurred in the course of and arose out of her employment, and thus they are barred by the Act.   However, as discussed above, I have determined that Plaintiff's breach of fiduciary duty claim, and resulting damages, are not "personal injuries" within the purview of Colorado's Workers' Compensation Act.

Furthermore, the jury was instructed that non-economic losses or injuries include "damages for emotional distress, for inconvenience, and for impairment of the quality of life, caused by the defendant's breach of fiduciary duty."   Under Colorado law, an injury is personal for the purposes § 13-21-101(1) "when it impairs the well-being or the mental or physical health of the victim [and] an injury is not personal when inflicted on property." *Herod v. Colorado Farm Bureau Mut. Ins. Co.,* 928 P.2d 834, 838 (Colo. App. 1996)(*citing McCafferty v. Musat,* 817 P.2d 1039, 1046 (Colo. App.1990)); *see also Miller v. Carnation Co.*, 564 P.2d 127 (Colo. App. 1977).  As a result, § 13-21-101(1) prejudgment interest was deemed applicable to an award for emotional distress on a bad faith breach of insurance contract claim in *Herod v. Colorado Farm Bureau Mutual Insurance, supra,* and was *per se* applicable in a malpractice action that involved actual physical or mental pain and suffering in *McCafferty v. Musat, supra.  See also Brooks v. Jackson,* 813 P.2d 847, 848 -849 (Colo. App. 1991)(defamation is a personal injury and thus prejudgment interest provisions of § 13-21-101 apply); *James v. Coors Brewing Co., supra,* 73 F.Supp.2d at 1257 (claims that sound in tort, such as intentional interference with contract and defamation, are controlled by § 13-21-101(1)).  Therefore, I agree with Plaintiff that the prejudgment interest provided in § 13-21-101(1) is applicable to her non-economic damages.

In addition, Defendant also does not directly challenge Plaintiff's assertion that such interest on her non-economic award should begin to accrue on October 1, 2002 – as the date plaintiff was fully aware that she would have to resign her employment and leave the county in a year – or that the interest should be compounded on the date suit was filed (May 18, 2004) and annually thereafter, as provided by § 13-21-101(1).  *See James v. Coors Brewing Co., supra,* 73

F.Supp.2d at 1257 (ruling that prejudgment interest accrues under § 13-21-101(1) on the date the plaintiff was defamed).

Finally, the parties disagree as to whether prejudgment interest should be awarded on the full amount of the jury verdict ($1,000,000) or if it should be awarded on the reduced/capped amount of $366,250. The relevant portion of § 13-21-101(1) provides that:

> it is the duty of the court in entering judgment for the plaintiff in such action *to add to the amount of damages assessed by the verdict of the jury, or found by the court*, interest on such amount calculated at the rate of nine percent per annum . . . (emphasis added).

Therefore, the question here is whether prejudgment interest should be calculated upon the amount of the jury verdict or on the reduced amount of damages actually awarded to Plaintiff pursuant to the applicable damages cap.

As a federal court sitting in diversity jurisdiction, I am to ascertain and apply the proper state law, "with the goal of insuring that the result obtained is the one that would have been reached in the state courts." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.,* 54 F.3d 618, 621 (10th Cir. 1995). As such, I am bound to apply the most recent statement of state law by the state's highest court, but I am "not required to follow the rulings of intermediate state courts, though [I] may treat such law as persuasive as to how the state supreme court might rule." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 -942 (10th Cir. 1997).

The Colorado Supreme Court has not addressed the issue raised here. Plaintiff relies on *Goodwin v. Morris*, ___ P.3d ___, 2006 WL 2291104 (Colo. App. Aug. 10, 2006), in which a division of the Colorado Court of Appeals ruled the prejudgment interest, as set forth in § 13-21-

18

101(1), was to be computed on the damages as awarded by the jury, as opposed to the capped damages.  In so doing, the division rejected the defendant's argument that the latter phrase of § 13-21-101(1) – "or found by the court" – modifies the former phrase – "by the verdict of the jury" – because:  1) the phrase "or found by the court" is clearly designed to cover the award of damages following a trial to the court sitting without a jury; and 2) the reduced non-economic damages following the application of the statutory cap are not damages "found by the court" but, rather, damages payable after the application of the cap.  *Id.*

I disagree with this analysis.  It is equally convincing that the Colorado Supreme Court would conclude that the phrase "damages . . . as found by the court" contemplates a final damages award entered after the court finds or determines the ultimate amount of proper legal damages – whether that be a capped or limited amount, as is applicable here, or otherwise reduced damage award.  This interpretation is consistent with other cases that have added prejudgment interest to the amount awarded after the court reduced a jury award without further discussion.  *See e.g. Stevens By & Through Stevens v. Humana of Delaware, Inc,*  832 P.2d 1076, 1077 (Colo. App. 1992)(upholding a verdict where the trial court reduced the non-economic damages and then added prejudgment interest); *Martinez v. Jesik,* 703 P.2d 638, 640 (Colo. App. 1985)(prejudgment interest on judgment was computed after reducing jury verdict by proportionate share of plaintiff's negligence); *James v. Coors Brewing Co., supra*, 73 F.Supp. 2d at 1258.

More importantly, my interpretation is consistent with the purpose of a prejudgment interest award as specifically expressed by the Colorado Supreme Court.   Prejudgment interest

19

under § 13-21-101 "is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the *award eventually obtained* against the tortfeasor." *Seaward Const. Co., Inc. v. Bradley,* 817 P.2d 971, 976 (Colo. 1991)(*quoting Allstate Ins. Co. v. Starke,* 797 P.2d 14, 16-17 (Colo. 1990)(emphasis added). "Prejudgment interest is a form of compensatory damages and represents a legislatively prescribed award for delay in a plaintiff's receipt of money to which he or she is legally entitled." *Witt v. State Farm Mut. Auto. Ins. Co.,* 942 P.2d 1326, 1327 (Colo. App. 1997); *see also Allstate Ins. Co. v. Starke, supra,* 797 P.2d at 19; *Heid v. Destefano,* 586 P.2d 246, 247 (Colo. App. 1978)("prejudgment interest is an additional item of compensatory damages"). The purpose of an award of prejudgment interest under § 13-21-101(1) is to "compensate a successful plaintiff for the loss of the use of the money to which he has been entitled." *Id.; see also Coale v. Dow Chem. Co.,*701 P.2d 885, 890 (Colo. App. 1985)(prejudgment interest is "awarded to indemnify the plaintiff for the loss of earnings on that money due to its delayed payment").

Accordingly, while the Colorado Supreme Court has not addressed the issue, I conclude that § 13-21-101(1) is intended to calculate prejudgment interest on the amount damages actually found and awarded a prevailing plaintiff by the court, as opposed to the amount initially awarded by a jury. My conclusion is based primarily on the clear policy evinced in Colorado law that prejudgment interest is an element of compensatory damages, intended to compensate the plaintiff for the time value of the award eventually obtained. Given this explicit policy, I agree with Defendant's contention that to award prejudgment interest on money above the applicable cap, that a plaintiff will not be awarded and is not legally entitled to, would be an unintended result of applying § 13-21-101(1) as urged by Plaintiff here.

20

Therefore, I conclude that the judgment should be amended in this case to provide for prejudgment interest of 9 % per annum –  commencing on October 1, 2002, and compounded on May 18, 2004, and then annually thereafter – pursuant to Colo. Rev. Stat. § 13-21-101(1), on the amount of the reduced  non-economic damage award of  $366,250.

**Interest on Economic Award**

Finally, Defendant does not dispute Plaintiff's contention that the 8% prejudgment interest on the economic damages award pursuant to Colo. Rev. Stat. § 5-12-102 should be calculated from the date of Plaintiff's termination, which the parties agree was October 1, 2003, not January 1, 2004 as is set forth in the judgment.  Therefore, I conclude that the judgment should be amended in this case to provide for prejudgment interest of 8 % per annum, calculated from October 1, 2003.

Accordingly, IT IS ORDERED that Defendant Lionbridge Technologies, Inc.'s Motion For New Trial Pursuant to Fed. R. Civ. P. 59(a), To Alter Or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e), or to Order Remittitur **[Doc #133]** and Plaintiff Isabelle DerKevorkian's Motion to Alter or Amend Judgment **[Doc # 129]** are both GRANTED IN PART and DENIED IN PART as follows:

> 1)  I GRANT Defendant's Motion to Order a Remittitur and, as such, I will ORDER a new trial on economic damages, unless Plaintiff accepts a remittitur to $221,433.00 for such  damages.  If Plaintiff fails to file an acceptance of remittitur on or before March 16, 2007, the court will schedule a new trial on economic damages only.  If Plaintiff accepts, I GRANT IN PART Plaintiff's Motion to Alter or Amend Judgment and, as a result, I ORDER that the judgment should be amended in this case to provide that Plaintiff be awarded prejudgment interest of 8 % per annum – calculated from October 1, 2003, the date of plaintiff's termination, to December 6, 2006 – pursuant to Colo. Rev. Stat. § 5-12-102, on economic damages of $221,433.00;

21

2)  I GRANT IN PART Defendant's Motion to Alter or Amend Judgment to the extent that I must apply the limit/cap set forth in to the award for non-economic damages under Colo. Rev. Stat. § 13-21-102.5(3)(a).  I GRANT IN PART Plaintiff's Motion to Alter or Amend Judgment and, as a result,  I ORDER that the judgment should be amended in this case to provide that Plaintiff be awarded prejudgment interest of 9 % per annum – commencing on October 1, 2002, and compounded on May 18, 2004, and then annually thereafter to December 6, 2006 – pursuant to Colo. Rev. Stat. § 13-21-101(1), on non-economic damages of $366,250; and

3) The motions are DENIED in all other respects.

Dated: February    27   , 2007, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE

22